SOUTHWESTERN ICE & COLD STORAGE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41183. Promulgated November 30, 1932.

*George G. Witter, Esq.*, for the petitioner.
*J. M. Leinenkugel, Esq.*, for the respondent.

OPINION.

SMITH: The respondent has determined deficiencies in the petitioner's income tax for the period January 1, to September 30, 1926, in the amount of $17,309.86, and for the period October 1 to December 31, 1926, in the amount of $5,769.96.

The petitioner on September 30, 1926, sold to an outside interest all of the capital stock of an affiliated company. The respondent computed the petitioner's profit on the sale at the difference between the cost of the stock to the petitioner in 1924 and the selling price and has allocated nine-twelfths of the profit so computed to the period January 1 to September 30, 1926, for which period the petitioner filed with its affiliated company a consolidated return, and three-twelfths to the period October 1 to December 31, 1926, for which

the petitioner filed a separate return. The petitioner contends (1) that it derived no taxable profit from the sale of the stock of its affiliated company; and (2) that the taxable profit, if any, as determined by the respondent should be reduced by the amount of the accumulated earnings of the affiliated company for the period January 1 to September 30, 1926, which were reported in the consolidated return filed for that period and taxed to the affiliated group.

The material facts are stipulated and are as follows:

Petitioner was incorporated under the laws of the State of Arizona on or about January 9, 1924.

The Yuma Utilities Company was incorporated under the laws of the State of Arizona on or about January 9, 1924.

The total issued capital stock of said Yuma Utilities Company from January 9, 1924 and until September 30, 1926, inclusive, consisted of 1,250 shares of Preferred stock of $100.00 par value and 500 shares of Common stock of no par value.

From January 9, 1924 and until September 30, 1926, inclusive, all of the outstanding stock of the Yuma Utilities Company was owned by the petitioner, with the exception of one share of common stock. Petitioner owned on January 1, 1926, and continuously from that date until September 30, 1926, 1,250 shares of Preferred and 499 shares of Common stock of the Yuma Utilities Company out of an outstanding stock issue of 1,250 shares of Preferred and 500 shares of Common.

Petitioner paid in 1924 in cash or equivalent the amount of $96,250.58 for the 1,250 shares of Preferred and 499 shares of Common stock of the Yuma Utilities Company.

During the month of September, 1926, petitioner entered into negotiations with the Sierras Construction Company, a Wyoming corporation, for the sale of its entire stockholdings in the Yuma Utilities Company, and on September 30, 1926, completed the sale to the Sierras Construction Company of all of the said stock owned by it.

Petitioner realized in cash or equivalent on September 30, 1926, on account of the sale of the Yuma Utilities Company the amount of $267,726.65.

Petitioner expended in 1926, during the period January 1st, to September 30, 1926, on account of selling expenses and cost of replacing transformers in connection with the sale of this stock the sum of $2,068.36.

Petitioner and the Yuma Utilities Company filed separate income tax returns for the years 1924 and 1925. For the year 1926 the new interests who had purchased the stock of Yuma Utilities Company from the petitioner filed original and amended separate returns of its income covering the period January 1, 1926 to September 30, 1926. On or about June 17, 1927 the petitioner filed a consolidated income tax return within the period allowed by law as extended by the Collector of Internal Revenue at Phoenix, Arizona. In this return there was included the income of the petitioner for the calendar year 1926 and the income of the Yuma Utilities Company for the period January 1st to September 30, 1926.

Treasury Department Form No. 1122, being Information Return of Subsidiary Corporation, was filled out and filed by the Yuma Utilities Company at the same time of filing the consolidated return noted above.

The total tax as shown by the consolidated return was $11,922.72. Of this sum $2,989.07 was agreed upon by petitioner and the Yuma Utilities Company as being the part assessable to the Yuma Utilities Company, and $8,933.65 assessable to the Southwestern Ice & Cold Storage Company.

There was not included as taxable income on the consolidated return filed by petitioner and the Yuma Utilities Company any gain that may have been realized from the sale by petitioner of its holdings of stock of the Yuma Utilities Company on September 30, 1926.

Nor was there claimed as a deduction from gross income on the said consolidated return filed the selling expenses and cost of replacing transformers in the aggregate amount of $2,068.36.

A statement was attached to the consolidated return wherein the sale of the stock of the Yuma Utilities Company was disclosed and in which statement it was stated that the difference between the cost and the sales price thereof was not being included in taxable income on the grounds that the sale was in fact the sale of the capital stock of the affiliated or consolidated entity upon which sale no taxable gain or loss could be realized. The book profit was shown as an addition to surplus on line 9 (a) of Schedule L of the consolidated tax return, in the amount of $86,337.50.

The Commissioner of Internal Revenue has included in the taxable net income of the consolidated entity allocable to the petitioner the sum of $169,-407.71, as taxable profit on the sale of the said stock of the Yuma Utilities Company.

Nine-twelfths of this profit, or $127,055.79, was included by the Commissioner of Internal Revenue in petitioner's net income for the period January 1st to September 30, 1926, and three-twelfths thereof, or $42,351.93, was included by the Commissioner in petitioner's net income for the period October 1, 1926, to December 31, 1926, and the deficiencies in tax asserted by the Commissioner are almost entirely due to these additions to taxable income.

The Yuma Utilities Company on September 30, 1926 had an earned surplus balance of $54,928.87. Of this amount $24,172.56 represented earnings of the Yuma Utilities Company from January 1, 1926 to September 30, 1926 and had been reported in the consolidated income tax return filed by this petitioner and the Yuma Utilities Company and a federal income tax paid thereon by the affiliated group. The balance of said surplus is the earnings of the Yuma Utilities Company during 1924 and 1925 during which years all of its outstanding stock as aforesaid was owned by this petitioner. For the years 1924 and 1925, however, Yuma Utilities Company filed separate returns and paid a tax on its said earnings for the years 1924 and 1925.

The facts in this proceeding are indistinguishable from those in *Remington Rand, Inc.* v. *Commissioner*, 33 Fed. (2d) 77, in respect of both of the issues raised. In that case the court held, reversing the Board (*Remington Rand, Inc.*, 11 B. T. A. 773), that, where the sale of the stock of the affiliated company terminated the affiliation, the sale was not an intercompany transaction, but occurred outside of the period of affiliation and resulted in a taxable profit to the seller, measured by the difference between the cost of the stock and the selling price. The court there said:

Concededly a gain of $15,000 was realized, unless the parent company may take into account as additional cost of the stock the subsidiary's accumulated

earnings of $28,454.35. It is argued that the parent company could have had its subsidiary declare its net profits as dividends, without subjecting the parent company to any tax, by reason of section 234 (a) (6), Revenue Act of 1918, and that it could then have invested such dividends in the business of the subsidiary, in which event they would be treated as an addition to the price paid for the stock. Regulation 45, art. 543. In other words, we are urged to hold that the accumulation of earnings by the subsidiary was a constructive receipt of dividends and reinvestment of them by the parent company. But the same argument could be made with equal force in respect to an individual or corporate owner of stock sufficient in amount to control the board of directors of the subsidiary, yet insufficient to result in affiliation. Tax liabilities must be determined by what in fact was done. See *United States* v. *Phellis*, 257 U. S. 156, 172, 42 S. Ct. 63, 66 L. Ed. 180. The fact is that no declaration of dividends and no reinvestment of them has occurred in either case, and it would seem unreasonable to accept the theory of constructive receipt and investment in the one case, but not in the other. Where affiliation is absent, no one doubts that the theory would be rejected; to accept it would contradict the theory of *Eisner* v. *Macomber*, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570.

Again, it is urged that a failure to treat the accumulated earnings as an addition to the cost of the stock will produce the inequitable result of double taxation, because the earnings have already been taxed as income of the affiliated group. But double taxation of this character will exist, though there be no affiliation between the owner of the stock and the corporation which issued it, and is, as pointed out in *Hellmich* v. *Hellman*, 276 U. S. 233, 237, 48 S. Ct. 244, 72 L. Ed. 544, 56 A. L. R. 379, the ordinary incident of a profitable sale of stock. We hold, therefore, that the sale resulted in taxable gain of $15,000.

The Board has followed the *Remington Rand* case in the following cases: *Obenchain-Boyer Co.*, 18 B. T. A. 293; *Universal Corp.*, 18 B. T. A. 319; *Canal-Commercial Nat. Bank*, 22 B. T. A. 541; *Roy & Titcomb, Inc.*, 23 B. T. A. 12; *H. Liebes & Co.*, 23 B. T. A. 787; and *Carey Salt Co.*, 26 B. T. A. 675. See also *United Publishers' Corp.* v. *Anderson*, 42 Fed. (2d) 781; *Wilmington Steamboat Co.* v. *Sturgess*, 52 Fed. (2d) 210; affd., 55 Fed. (2d) 831; *American Printing Co.* v. *United States*, 53 Fed. (2d) 98; *Charles Ilfeld Co.* v. *Hernandez* (U. S. Dist. Ct., for Dist. of New Mexico, Aug. 19, 1932). In *United Publishers' Corp.* v. *Anderson, supra*, the District Court for the Southern District of New York, upon authority of the *Remington Rand case*, held that the deductible loss resulting from the sale of the stock of an affiliated company is the difference between the cost of the stock and the selling price, without any allowance for the operating loss of the affiliated company which had been allowed as a deduction in the consolidated returns previously filed by the affiliated group. The court considered the question there as the direct converse of that in the *Remington Rand* case. In *Riggs Nat. Bank*, 17 B. T. A. 615; affd., 57 Fed. (2d) 980, we held, however, that in computing the deductible loss sustained by the taxpayer upon

liquidation and merger of a subsidiary company on June 10, 1922, allowance should be made for the operating loss of the subsidiary company for the period of affiliation from January 1 to June 10, 1922, which loss was reported in the consolidated return filed by the companies for that period and allowed as a deduction in computing the consolidated income. See also *Houghton & Dutton Co.*, 26 B. T. A. 1420, following *Riggs Nat. Bank, supra.*

The petitioner argues that the situation here is the direct converse of that in the *Riggs Nat. Bank* case; that if the loss resulting from liquidation (or sale), must be reduced by the amount of the operating loss of the subsidiary, which was deducted in the consolidated return filed for the period of affiliation prior to the sale, then also the gain, if any, upon the sale should be reduced by the amount of the operating gain of the subsidiary which likewise was reported in the consolidated return filed for the period of affiliation preceding the sale. We are of opinion that the argument is not sound. For, while the statute governing the filing of consolidated returns permits the loss of a subsidiary company to be applied against the taxable gain of the parent company, or *vice versa*, it does not impose any liability on the one company for the tax on the income of the other. It does not follow, from the fact that the net income of one member of an affiliated group may be reduced by the operating loss of another member of the group, that the net income of one member may be reduced by the net income of another member which itself pays tax upon its net income. In other words, the operating gain of the Yuma Utilities Company for the period January 9 to September 30, 1926, was its separate income, for which it would have been separately liable to pay the tax; while if, instead of a gain, the subsidiary had sustained an operating loss, the petitioner would have been allowed to reduce its own taxable gain by the amount thereof, as was the situation in the *Riggs Nat. Bank* case.

Obviously, too, the petitioner's reasoning leads us to a result directly contrary to that reached by the court in the *Remington Rand* case upon identical facts.

For reasons fully expressed by the court in the *Remington Rand* case, and upon authority of that and the other cited cases, we hold that the petitioner's taxable profit on the sale of the stock of its affiliated company was the difference between the cost, $96,250.58, and the selling price, $267,726.65, less the expenses of $2,068.36 incident to the sale.

*Judgment will be entered under Rule 50.*